# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ALVARO MAGALHAES, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-CV-00351-DGK |
| | ) |
| HONORABLE ROBERT WILKIE, | ) |
| Secretary of the Department of | ) |
| Veterans Affairs, | ) |
| | ) |
| Defendant. | ) |

## ORDER AFFIRMING AGENCY ACTION

This action arises from Plaintiff Alvaro Magalhaes, M.D.'s termination from the Kansas City Department of Veterans Affairs Medical Center ("VAMC"). Plaintiff alleges the agency's decision to terminate his employment and revoke his clinical privileges is unsupported by substantial evidence, arbitrary and capricious, and obtained without the procedures required by law or regulation. Because the factual determinations are supported by substantial evidence, and his termination is rationally connected to those facts, the decision is AFFIRMED.

### Facts

The U.S. Department of Veteran Affairs ("VA") is an executive department led by Secretary Robert Wilkie ("Defendant"). The VA, through the Veterans Health Administration, operates a national healthcare system that includes the VAMC. From 2010 to 2016, VAMC employed Plaintiff as a full-time neuroradiologist appointed under 38 U.S.C. § 7401(1).

On March 3, 2016, the VAMC Emergency Room Director informed the Service Chief of the VAMC Radiology Service ("Chief of Radiology") that Plaintiff had failed to diagnose a subarachnoid hemorrhage in two computed tomography ("CT") scans regarding the same patient.

The Chief of Radiology believed this failure was a significant error and took her concerns to the VAMC's Chief of Staff.

Because of the significance of the misreading, the Chief of Staff submitted a recommendation for the suspension of Plaintiff's clinical privileges to the VAMC Professional Standards Board ("PSB") and the Executive Committee of the Medical Staff ("ECMS"). On March 4, 2016, both the PSB and the ECMS decided to summarily suspend Plaintiff's clinical privileges. When Plaintiff returned from a previously scheduled leave of absence on March 14, the Chief of Staff and the Chief of Radiology alerted Plaintiff his clinical privileges had been suspended and he was under review.

An internal neuroradiologist at VAMC, Jordan Sessions, M.D., conducted a review of sixty of Plaintiff's cases. Most were randomly selected, but a few were cases in which the Chief of Radiology had been informed of concerns with Plaintiff's work by other providers. Of the sixty cases, Dr. Sessions identified sixteen as being major misses. Those sixteen cases were then sent to Daniel Martin, M.D., an external neuroradiologist at a different VA hospital, for review. Dr. Martin came to the same conclusion as Dr. Sessions in thirteen out of the sixteen cases.

Plaintiff filed a written response to the sixteen cases, and on April 12, 2016, the Chief of Radiology presented the results of the sixteen cases, as well as Plaintiff's response, to the PSB. Immediately after the PSB meeting, the ECMS held a special session where Plaintiff presented on each of the sixteen cases. Both the PSB and ECMS recommended revocation of privileges and removal based on their review and Plaintiff's comments on the sixteen cases.

A few days later, the Chief of Staff determined that seven of the cases should not have been considered by the PSB and ECMS because they were not randomly selected and had previously been discussed with Plaintiff. The Chief of Staff then presented the nine remaining cases to the

PSB and ECMS, and upon review of those cases, the PSB and ECMS again determined that removal and revocation of privileges was warranted.

On July 5, 2016, the Chief of Staff proposed Plaintiff's privileges be revoked and he be removed from employment. His penalty was based on a single charge: failure to demonstrate appropriate radiologist skills, which encompassed nine specifications (or cases) supporting his removal. In August 2016, the Medical Center Director, Kathleen Fogarty, sustained the charge and all related cases. She also upheld the penalty of removal of privileges.

Plaintiff subsequently requested a hearing before the Disciplinary Appeals Board ("DAB"). The DAB, which consisted of two radiologists and a medical doctor selected by the Deputy Under Secretary for Health Operations and Management, held a two-day hearing in February 2017.

At the hearing, the DAB heard testimony from Dr. Martin, the Chief of Radiology, the Chief of Staff, the Medical Center Director, and Plaintiff. The DAB also had before it the administrative record, which included, among other things, the findings of Dr. Sessions and Dr. Martin, Plaintiff's written responses to the charge, a summary of Plaintiff's oral response to the charge, letters to Plaintiff regarding his removal and revocation, agency procedures, and articles concerning the medical significance of Plaintiff's misreadings.

Following the hearing, the DAB unanimously sustained seven of the nine cases and found the charge—failure to demonstrate appropriate radiologist skills—to be sustained by a preponderance of the evidence. The seven cases sustained included missed diagnoses of a subarachnoid hemorrhage, a disc extrusion, a neck tumor, two benign brain tumors, bilateral pars

defects with grade 1-2 spondylolisthesis,[1] and brain metastases, that is, cancer spread to the brain from another primary cancer site. The DAB did not sustain the other two cases because it found one to be an understandable miss and the other a careless dictation error. In its decision, the DAB also noted that Plaintiff had resigned from his last job at a different VA after he was placed on one hundred percent clinical practice review; he was placed on this review following reports of erroneous neuroradiology interpretations. It also found that Plaintiff failed to take responsibility for many of the misreadings and to appreciate the potential for patient harm. Thus, the DAB sustained Dr. Magalhaes' removal.

The Principal Deputy Under Secretary affirmed the DAB's decision. Plaintiff then filed this complaint, seeking judicial review of the agency's decision to terminate his employment.

**Standard of Review**

Under 38 U.S.C. § 7462(f)(2), a reviewing court should only set aside the DAB's decision when a finding or conclusion is found to be: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence." "This standard 'mirrors the standards for judicial review of other administrative actions, and analogous administrative law precedents are applicable.'" *Pocha v. McDonald*, No. CV 15-475 (DWF/FLN), 2016 WL 916417, at *4 (D. Minn. Mar. 10, 2016) (*quoting Abaqueta v. United States*, 255 F. Supp. 2d 1020, 1024 (D. Ariz. 2003)).

---

[1] "Spondylolisthesis is a condition in which a bone (vertebra) in the lower part of the spine slips out of the proper position onto the bone below it." *Constant v. Astrue*, No. 11-0455-CV-W-REL-SSA, 2012 WL 2684971, at *6 (W.D. Mo. July 6, 2012).

## Discussion[2]

**I.     The DAB's decision is supported by substantial evidence.**

Plaintiff contends the DAB's decision is unsupported by substantial evidence because the DAB "essentially ignores the testimony of the Plaintiff, and, instead violated its own rulings by relying, in whole or part, on alleged evidence emanating from Dr. Sessions." Pl. Br. at 7. He also argues the DAB's decision is erroneous because no patient suffered an adverse outcome and because the DAB failed to consider Plaintiff's entire body of work in making its decision. Pl. Br. at 8. These arguments are unavailing.

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Plaintiff first contends the DAB improperly discredited his testimony. After reviewing the record, the Court finds that the DAB properly gave little weight to Plaintiff's testimony. As the DAB noted, Plaintiff was "evasive at times," "seemed to skirt around the issues in which the mistakes were made," and "blame[d] others or place[d] responsibility for missing his diagnoses on others or systems." R. at 14. The DAB also recognized that when Plaintiff admitted to an error, he "minimized the events" and refused to recognize "the impact of his delayed or missed diagnoses" and "potential adverse consequences" for patients. *Id*. Because these findings are supported by Plaintiff's oral and written responses, the DAB did not err by giving little weight to

---

[2] "As a general rule, [the court] will not consider arguments raised for the first time in a reply brief." *Barham v. Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006). Thus, to the extent the Plaintiff raises new arguments in his reply brief, the Court does not address them.

his testimony. *See Abaqueta*, 255 F. Supp. 2d at 1026 (noting the court gives great deference to the findings of fact of a DAB because it had the opportunity to observe the witnesses' demeanor).

Plaintiff also argues the DAB erroneously mentioned that Dr. Sessions' review of two cases was consistent with the findings of Dr. Martin. He claims these findings are inadmissible hearsay. But relevant and material hearsay may be relied upon in the administrative context. *See Richardson v. Perales*, 402 U.S. 389, 407-08 (1971) (finding there is no "blanket rejection of administrative reliance on hearsay irrespective of reliability and probative value"); *Beck v. Shinseki*, No. CV-113-126, 2015 WL 1202196, at *24 (S.D. Ga. Mar. 16, 2015) (finding "no authority" for terminated VA nurse's "position that hearsay is forbidden in § 7462 proceedings"). Here, Dr. Sessions' imaging forms were part of the administrative record, and his findings were relevant and material because they address whether Plaintiff's misreadings were understandable mistakes or significant failures.

Moreover, the DAB did not rely on Dr. Sessions' findings as substantial evidence to support its decision in the two cases. Rather, the DAB relied on Dr. Martin's findings and testimony, as well as Plaintiff's testimony, the medical charts, and the testimony of the other VAMC staff. Thus, the DAB's notation that Dr. Sessions' findings were consistent with Dr. Martin's on two occasions is not error. The DAB's decision is supported by substantial evidence even without Dr. Sessions' findings.

Next, Plaintiff asserts the DAB's decision is not supported by substantial evidence because the sixty cases selected for review and the seven cases determined to be unacceptable mistakes constitute a small percentage of his work. Plaintiff provides no support for his argument that the DAB is required to balance Plaintiff's correct interpretations with his missed ones. Nor could he. To so find would insulate doctors from termination after making significant mistakes, not just

understandable ones. It is not error for the DAB to sustain Plaintiff's removal based on seven significant misreadings, any one of which could have led to an adverse outcome for a patient.

To that point, Plaintiff argues the DAB erroneously speculated that Plaintiff's misreadings could have led to tragic outcomes even though no patient was harmed. But the DAB heard expert testimony that the misreadings could have led to poor outcomes for patients, and the radiologists on the DAB agreed based on the medical records. *See Beck*, 2015 WL 1202196, at *9, 14 n.40 (finding it was proper for DAB to rely on "its clinical expertise and "professional nursing experience and judgment" in reviewing care provided by a VA nurse). Thus, the DAB's conclusion that poor outcomes could have resulted from the misreadings was not speculation.

The DAB based its findings on Plaintiff's testimony, as well as the credible testimony of Dr. Martin, the Chief of Radiology, the Chief of Staff, and the Medical Center Director that these seven mistakes were significant and could have resulted in adverse outcomes for patients. Moreover, the DAB itself, which included two radiologists, reviewed the medical records before outlining thorough evidence to support its findings. Thus, the record contains "evidence that a reasonable mind would accept as adequate to support" the DAB's finding that Plaintiff failed to demonstrate the acceptable standard of radiologist skills. *Haley*, 258 F.3d at 747.

## II.     The DAB decision is not arbitrary or capricious.

Plaintiff further complains the DAB's decision was arbitrary and capricious because the seven cases it sustained were a small percentage of Plaintiff's body of work; professional standards indicate a five percent error rate is normal; the conclusions were speculative; and the DAB members inserted their own opinions into the case. Put simply, he claims "there is a clear absence of a rational connection between the findings of fact of the DAB and the termination decision." Pl. Br. at 7. This argument is without merit.

> A decision is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*McClung v. Paul*, 788 F.3d. 822, 828 (8th Cir. 2015) (*quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Under this narrow standard, "a court is not to substitute its judgment for that of the agency," yet "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (*quoting Burlington Truck Lines v. U.S.,* 371 U.S. 156, 168 (1962)). "If an agency's determination is supportable on any rational basis, [a court] must uphold it," especially "when an agency is acting within its own sphere of expertise." *Voyageurs Nat'l Park Ass'n v. Norton,* 381 F.3d 759, 763 (8th Cir. 2004).

After a thorough review of the record, the Court concludes the DAB's decision was not arbitrary and capricious. While Plaintiff speculates the cases given to the DAB were not randomly selected, he provides no support for his argument. In fact, this suspicion is belied by the fact that the Chief of Staff removed seven of the sixteen cases after finding they were not randomly selected. Further, Plaintiff does not explain how, even if the cases were not random, this would make the DAB's decision arbitrary and capricious. Regardless of how the cases got before the DAB, there was substantial evidence before it that Plaintiff failed to exercise appropriate radiological skills.

Plaintiff also complains that the DAB improperly failed to consider that radiologists average a five percent error rate. Although Dr. Martin did testify that radiologists will make some mistakes, he also testified that some mistakes are more significant and that a radiologist's willingness to accept responsibility for his or her misreading is important in determining whether the mistake is reasonable. So, while a five percent error rate may be normal, that does not mean

all mistakes are treated equally. In fact, the DAB in this case determined that two of Plaintiff's mistakes were understandable misses but concluded the other seven cases were significant misses that demonstrated a lack of competency. It was not error for the DAB to sustain Plaintiff's removal despite these seven misreadings being a small percentage of his work.

Finally, Plaintiff again argues the DAB's findings that patients could have been harmed was speculative and based on its own interpretation of the evidence. First, the Court declines to find a patient must be harmed before termination is appropriate. And, as discussed, the DAB's conclusions that patients could have adverse outcomes from the misreadings is based on credible testimony and the DAB's own review of the medical evidence, which is not improper. *Beck*, 2015 WL 1202196, at *9, 14 n.40.

While a lesser sanction may have also been appropriate, the DAB's decision is not "counter to the evidence before the agency" or "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 994 (8th Cir. 2016). The DAB found Plaintiff "made multiple serious diagnostic errors that have the potential to affect a veteran's evaluation, treatment and prognosis" and "demonstrated no remorse and failed to self-acknowledge that his radiological skills were deficient and in need of improvement." R. at 14, 15. Thus, the DAB found Plaintiff's continued employment would be "likely to result in more clinically significant diagnostic radiological errors," and therefore sustained his termination. R. at 15. The DAB's decision is not arbitrary or capricious.

### III. The DAB's decision did not violate Plaintiff's due process rights.

Plaintiff does not complain that the VA failed to provide him with any of the due process rights afforded to Title 38 employees under 38 U.S.C. § 7462. Instead, he argues the DAB violated his due process rights by referencing two of Dr. Sessions' findings even though he did not have an

9

opportunity to cross-examine Dr. Sessions.

There is no absolute right to cross-examine a witness in an administrative hearing. *See Kreso v. Shinseki*, 67 F. Supp. 3d 1235, 1252 (D. Colo. 2014), *aff'd sub nom. Kreso v. McDonald*, 631 F. App'x 519 (10th Cir. 2015) ("a party in an administrative discharge hearing does not have an absolute right to cross-examine witnesses"). And, here, the Court finds that Plaintiff received due process notwithstanding his inability to cross-examine Dr. Sessions about his findings.

Dr. Sessions' findings were part of the administrative record, and there is no factual dispute that Dr. Sessions found all nine cases to be significant misreadings. *See Richardson*, 402 U.S. at 407-08 (finding relevant and material hearsay admissible). Indeed, Plaintiff did not complain about the inclusion of these findings in the record. And, in fact, Plaintiff addressed Dr. Sessions' findings both orally and in written responses, so he was not blindsided by Dr. Sessions findings at the hearing or unable to respond to them.

Plaintiff also brought his concerns about Dr. Sessions' findings to the DAB's attention, and it acknowledged that Dr. Sessions was not available to testify and that his findings would not be given weight. While it did mention two of his findings in its decision, the DAB did so only to acknowledge that Dr. Martin had reached the same conclusion. It did not solely rely on those findings as substantial evidence to support its decision, as previously discussed.

Thus, there no evidence that cross examination of Dr. Sessions would have changed the DAB's decision. *See Riano v. Shinseki*, No. 11-CV-0939, 2015 WL 1311445, at *13 (E.D. Wis. Mar. 24, 2015), *aff'd sub nom. Riano v. McDonald*, 833 F.3d 830 (7th Cir. 2016) (finding the plaintiff received due process notwithstanding that he could not call and question the patients whose statements were part of the record and resulted in the cases before the DAB). The DAB did not violate Plaintiff's due process rights.

**IV.     The DAB decision is in accordance with applicable law and regulation.**

Finally, Plaintiff alleges the DAB's decision does not comport with applicable law and regulations because the selection process for the sixty cases reviewed by Dr. Sessions was not random. Plaintiff believes that "[h]ad the PSB and ECMS consulted with Plaintiff on the method of selection of the sixty cases, such irregular procedures would have been avoided and a more representative case sample would have resulted and possibly resulted in a much different decision as it concerns Plaintiff." Pl. Br. at 10.

Plaintiff cites no legal authority or specific rule in the VA Handbook to support his claim. In fact, Plaintiff's argument is contradicted by the DAB's explicit finding that the agency followed the process outlined in the VA Handbook 1100.19. *See Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512 (1994) ("[w]e must give substantial deference to an agency's interpretation of its own regulations").

In any event, the method of selecting the cases is of no importance so long as the evidence presented before the DAB shows by a preponderance of the evidence that Plaintiff failed to demonstrate appropriate radiologist skills. The evidence demonstrated that here.

**Conclusion**

The DAB made proper, factual determinations supported by substantial evidence and, based on those determinations, recommended Plaintiff's termination. Applying the deferential standard of 38 U.S.C. § 7462, the DAB's decision must be AFFIRMED.

**IT IS SO ORDERED.**

Date:  May 20, 2019                    /s/ Greg Kays
                                                                        GREG KAYS, JUDGE
                                                                        UNITED STATES DISTRICT COURT